**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| NYCAL OFFSHORE DEVELOPMENT ) | |
| CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 19-966 (RBW) |
| ) | |
| DEBRA HAALAND, in her official ) | |
| capacity as Secretary of the Department of ) | |
| the Interior, [1] ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## <u>MEMORANDUM OPINION</u>

The plaintiff, Nycal Offshore Development Corporation, brings this civil action pursuant

to 28 U.S.C. § 2201, against the defendant, Debra Haaland, Secretary (the "Secretary") of the

Department of the Interior (the "Department").  <u>See</u> Complaint ("Compl.") ¶ 1, ECF No. 1.

Currently pending before the Court is the Secretary's motion to dismiss. <u>See</u> Defendant's Motion

to Dismiss ("Def.'s Mot."), ECF No. 12.  Upon careful consideration of the parties'

submissions,[2] the Court concludes for the following reasons that it must grant the Secretary's

motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

---

[1] Debra Haaland is the current Secretary of the Interior, and she is therefore substituted for David Bernhardt as the proper party defendant pursuant to Federal Rule of Civil Procedure 25(d).

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Secretary's Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss ("Def.'s Mem."), ECF No. 12; (2) the plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Pl.'s Opp'n"), ECF No. 17; and (3) the Secretary's Reply in Further Support of Defendant's Motion to Dismiss ("Def.'s Reply"), ECF No. 19.

## I.      BACKGROUND

The following allegations are taken from the plaintiff's Complaint unless stated

otherwise.  In 1982, the Secretary sold oil and gas exploration leases for lands offshore the

California coast, see Compl. ¶ 12, including "a pair of leases for oil and gas exploration in

Federal submerged lands offshore of Santa Barbara, California [(the 'Leases'),]" id. ¶ 1.  The

Leases were issued with a primary term of five years.  Id. ¶ 12.  The plaintiff purchased a

fractional interest in the Leases from a successor lessee in 1990.  Id. ¶ 13.

Prior to and after the plaintiff's purchase, the Secretary suspended the leases to allow for

completion of an oil and gas development study.  Id. ¶ 14.  These suspensions essentially

"continued the [L]eases in effect."  Id.  On November 12, 1999, the Secretary, based on "a study

[ ] carried out concerning the status and future of oil and gas development offshore of

California[,]" granted an additional suspension (the "1999 suspension").  Id. ¶ 14–15.  On

November 15, 1999, the State of California filed suit in the United States District Court for the

Northern District of California to invalidate the 1999 suspension claiming that the Secretary

lacked "authority to grant the November 1999 suspensions without first determining that those

suspensions would be consistent with California's coastal management program[,]" in violation

of the Coastal Zone Management Act, 16 U.S.C. § 1456(c)(1).  Id. ¶ 16.  On June 20, 2001, the

United States District Court for the Northern District of California agreed with the State of

California and ordered the Secretary "to set aside its approval of the requested suspensions" and

"direct suspensions of the [Leases] . . . for a time sufficient" to complete its Coastal Zone

Management Act compliance obligations.  Id. ¶¶ 16–17; Pl.'s Opp'n at 3 (citing California ex rel.

Cal. Coastal Comm'n v. Norton, 150 F. Supp. 2d 1046, 1057–58 (N.D. Cal. 2001), aff'd, 311

F.3d 1162 (9th Cir. 2002)).  As ordered, the Secretary "issu[ed] the directed suspension."  Pl.'s Opp'n at 4.

"In 2002, many of the lessees, including other factional interest holders in the [L]eases, commenced an action in the [United States] Court of Federal Claims."  Compl. ¶ 21.  Those lessees, who did not include the plaintiff, prevailed and were awarded restitution, "which required the return of these lessees' leases to the United States."  Id. ¶ 22.  On April 10, 2009, those lessees assigned their leasehold interests to the United States.  Id. (citing Amber Res. Co. v. United States, 68 Fed. Cl. 535 (2005), aff'd, 538 F.3d 1358 (Fed. Cir. 2008)).  The plaintiff was not a party in the Court of Federal Claims litigation brought by the other lessees, was not a recipient of the resulting restitution award, and, therefore, did not assign its interests to the United States.  See id.  The plaintiff filed a separate suit in the Court of Federal Claims in 2005. See Compl. ¶ 21.  The plaintiff ultimately did not prevail in that case and its claim for lost profits was dismissed.  Id. ¶ 23.

In 2013, "the Regional Director of the [ ] Department's Bureau of Safety and Environmental Enforcement, Pacific Region, sent a letter [(the 'Ming Letter')] to [the plaintiff] at its London headquarters[.]"  Id. ¶ 24.  The letter stated "that the [L]eases '[had] not been relinquished nor ha[d] they expired due to the continued court-ordered directed suspensions on those lease[s].'"  Id.; see also Pl.'s Opp'n, Ex. 4 (Ming Letter).  The letter further stated "that the Department '[would] request permission to lift the court-ordered directed suspensions[.]'" Compl. ¶ 24.  The letter "not[ed] that '[the plaintiff's] leases [were] not in the primary term, no production or operations ha[d] occurred on [the plaintiff's] leases for more than 180 days, and there [was] not a suspension request for these leases upon which [the Department] may act.'"  Id. (alteration in original).  Although the plaintiff "received this letter[,]" it continued "to pursue its

3

damage[s] action, which was then awaiting briefing in the [United States] Court of Appeals for the Federal Circuit." Id.

"[O]n or about June 17, 2013, the United States moved to have the directed suspensions [lifted], but it never served the motion papers on [the plaintiff]." Id. ¶ 25. On July 13, 2013, the Northern District of California "granted what it denominated as the 'Federal Defendants' Amended Unopposed Motion,' ordering that '[t]he lease suspensions ordered by th[at] Court in its order of June 20, 2001, 150 F. Supp. 2d 1046, 1057–58 (N.D. Cal. 2001) are hereby LIFTED.'" Id. ¶ 33 (quoting Order at 1–2, California ex rel. Cal. Coastal Comm'n, No. 4:99-cv-04964-CW, ECF No. 180 (N.D. Cal. July 23, 2013) (order lifting directed suspensions) ("the Northern District of California's July 2013 order") (capitalization in original).

On August 12, 2013, the Department sent another letter to the plaintiff . . . stating that, "[a]s a consequence of the [Northern District of California's July 13, 2013] order, [the plaintiff's] lease has expired, effective July 23, 2013." Compl., Exhibit ("Ex.") A (Letter from Joan Barminski, Regional Supervisor, U.S. Dep't of the Interior, to William G. Horn, Nycal Offshore Dev. Corp. (the "Barminski Letter")) at 1–2.[3] According to the plaintiff, it was not aware of the 2013 proceedings in the Northern District of California, did not receive this letter, and did not learn about either until 2017. Id. ¶¶ 35–37.

Once the plaintiff learned of these events, it filed a motion to intervene and void the Northern District of California's July 2013 order due to the "failure of the [United States] to serve[ ]its motion paper []" on the plaintiff. Id. ¶ 37. The Northern District of California denied

---

[3] As Exhibit A to its Complaint, the plaintiff attached a number of different documents, with no consistent page numbering throughout the exhibit. See, e.g., Compl., Ex. A (Barminski Letter) at 1–2; id., Ex. A (Order, California ex. rel. Cal. Coastal Comm'n, No. 4:99-cv-04964-CW (N.D. Cal. July 23, 2013)) at 3–4. Accordingly, for ease of reference, the Court will refer to the documents in Exhibit A using the page numbers automatically generated by the Court's ECF system.

the plaintiff's motion to intervene, concluding that the plaintiff "should have intervened years ago in order to protect its inchoate interest" in the Leases.  Id. ¶¶ 40–41.  The plaintiff appealed that ruling.  Id. at ¶ 42.[4]

On April 5, 2019, the plaintiff filed its Complaint in this Court, "seeking a judgment, pursuant to 28 U.S.C. § 2201, declaring that [the plaintiff] is[,] and has been since 1990[,] the owner of a fractional interest in [the Leases]."  See id. ¶ 1.  On September 27, 2019, the Secretary filed her motion to dismiss based on Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  See generally Def.'s Mot.

## II.    STANDARDS OF REVIEW

### A.    Rule 12(b)(1) Motion to Dismiss

Federal district courts are courts of limited jurisdiction, see Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994), and therefore, "[a] motion for dismissal under [Federal Rule of Civil Procedure] 12(b)(1) 'presents a threshold challenge to the [C]ourt's jurisdiction[,]'" Morrow v. United States, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (Walton, J.) (quoting Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987)).  Thus, the Court is obligated to dismiss a claim if it "lack[s] [ ] subject[-]matter jurisdiction[.]"  Fed. R. Civ. P. 12(b)(1).  And, because "it is to be presumed that a cause lies outside [ ] [the Court's] limited jurisdiction," Kokkonen, 511 U.S. at 377, "the plaintiff bears the burden of pro[ving]" that the Court has jurisdiction over the plaintiff's claims, Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).

---

[4] The parties dispute the status of the plaintiff's appeal of the Northern District of California's July 2013 order, compare Def.'s Mot. at 2 (asserting that the plaintiff has "since abandoned that appeal"), with Compl. ¶ 42 (alleging that the plaintiff "is appealing that ruling"), however the Court need not resolve this dispute because the existence of an appeal of the plaintiff's motion to intervene in the Northern District of California case has no bearing on the resolution of the Secretary's motion in this case.

In deciding a motion to dismiss based upon a lack of subject-matter jurisdiction, the Court "need not limit itself to the allegations of the complaint." Grand Lodge of the Fraternal Ord. of Police v. Ashcroft, 185 F. Supp. 2d 9, 14 (D.D.C. 2001). Rather, the "[C]ourt may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); see also Jerome Stevens Pharms., Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253 (D.C. Cir. 2005). Additionally, the Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged[.]'" Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp., 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)). However, "the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13–14 (alterations in original) (internal quotation marks omitted).

**B.      Rule 12(b)(6) Motion to Dismiss**

A Rule 12(b)(6) motion tests whether a complaint "state[s] a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

6

In evaluating a motion to dismiss under Rule 12(b)(6), "the Court must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). While the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in a complaint, conclusory allegations "are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555). Also, the Court need not "accept legal conclusions cast as factual allegations[,]" or "inferences drawn by [the] plaintiff if those inferences are not supported by the facts set out in the complaint[.]" Hettinga, 677 F.3d at 476. The Court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial notice." Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

### III.    ANALYSIS

The Secretary's motion to dismiss contends that the Court lacks subject-matter jurisdiction to hear the plaintiff's claims, Def.'s Mem. at 10, and that the plaintiff has failed to state a claim alleging final agency action, see id. at 12. The Secretary also argues that the plaintiff's claims constitute an impermissible collateral attack on judgments rendered by another court, id. at 17, but the Court need not address this argument because the Court agrees that the plaintiff has filed to state a claim alleging final agency action.

### A.    Rule 12(b)(1)

The Court must first consider the Secretary's jurisdictional arguments. See Noel Canning v. Nat'l Lab. Rel. Bd., 705 F.3d 490, 496 (D.C. Cir. 2013) ("[F]ederal courts, being courts of

limited jurisdiction, must assure themselves of jurisdiction over any controversy they hear[.]").

The Secretary argues that the plaintiff "fails to establish that [the government's] sovereign

immunity has been waived[,]" Def.'s Mem. at 11, because the two statutes cited by the plaintiff

in its Complaint, 28 U.S.C. § 1331 and the Declaratory Judgment Act, 28 U.S.C. § 2201, see

Compl. ¶ 7 (alleging that the "Court has subject[-]matter jurisdiction to adjudicate this action

under 28 U.S.C. §§ 1331 and 2201"), "do[] not provide a waiver of sovereign immunity[,]"

Def.'s Mem. at 11.  In response, the plaintiff presents no argument that the Declaratory Judgment

Act confers subject-matter jurisdiction on the Court, see generally Pl.'s Opp'n, and only

cursorily argues that § 1331 confers jurisdiction on the Court because the Secretary "prematurely

terminate[d] the right of a lessee whose property interest derived from the statutes governing

production of hydrocarbons from Federal offshore lands" and "[n]o official has the power to do

that without being subject to judicial review[,]" id. at 11.  As authority for this proposition, the

plaintiff cites "the discussion of the Larson-Dugan exception to the doctrine that the general

federal question statute does not waive sovereign immunity."  Id. (citing Swan v. Clinton, 100

F.3d 973, 981 (D.C. Cir. 1996)).  The Court agrees with the Secretary that neither § 1331 nor the

Declaratory Judgment Act confer subject-matter jurisdiction to this Court over the plaintiff's

claims.

  First, the United States possesses sovereign immunity from suit "unless Congress has

expressly waived the immunity defense."  Z St., Inc. v. Koskinen, 44 F. Supp. 3d 48, 62 (D.D.C.

2014).  "[T]he existence of consent is a prerequisite for jurisdiction."  United States v. Mitchell,

463 U.S. 206, 212 (1983).  As the Secretary correctly notes, see Def.'s Mem. at 10, the

Declaratory Judgment Act does not confer subject-matter jurisdiction.  See Yee v. Jewell,

228 F. Supp. 3d 48, 53 (D.C. Cir. 2017) ("[T]he Declaratory Judgment Act is not a jurisdiction-conferring statute.").

Second, as the Secretary again correctly notes, see Def.'s Mem. at 11, § 1331 does not by itself waive sovereign immunity.  See Swan v. Clinton, 100 F.3d 973, 981 (D.C. Cir. 1996) (noting that "[n]either the general federal question statute nor the mandamus statute by itself waives sovereign immunity").  Nevertheless, as the plaintiff correctly indicates, see Pl.'s Opp'n at 11, the Larson-Dugan exception "holds that sovereign immunity does not apply as a bar to suits alleging that an officer's actions were unconstitutional or beyond statutory authority, on the grounds that 'where the officer's powers are limited by statute, his [or her] actions beyond those limitations are considered individual and not sovereign actions[,]'" Swan, 100 F.3d at 981 (quoting Larson v. Domestic & Foreign Com. Corp., 337 U.S. 682, 689 (1949)) (citing Dugan v. Rank, 372 U.S. 609, 621–23 (1963)).

However, for the Larson-Dugan exception to apply, the plaintiff must identify a "statutory [or constitutional] source of authority that limits the defendant's actions."  Maynard v. Architect of the Capitol, Civ. Action No. 19-258, 2021 WL 2417350, at *10 (D.D.C. June 14, 2021) (Walton, J.).  As the Secretary accurately notes, the plaintiff's "passing reference to the" exception "does not specify which statutory provision [was] allegedly violated [ ]."  See Def.'s Mem. at 4 n.1.  Indeed, the plaintiff only alleges that its leases were terminated "in violation of law."  See Compl. ¶ 3.  And the plaintiff's opposition merely asserts that "[n]o official has the power to do [what was allegedly done] without being subject to judicial review."  Pl.'s Opp'n at 11.  Accordingly, the plaintiff's reference to the Larson-Dugan exception is unavailing.

Although the plaintiff's Complaint does not reference it, the Secretary asserts that "the only way [the plaintiff] can establish subject matter jurisdiction in this case is through [an

alleged violation of] the Administrative Procedure Act [('APA').]"  Def.'s Mem. at 12.  The

Secretary is correct.  In "[t]he absence of an express sovereign immunity waiver," <u>Mackinac</u>

<u>Tribe v. Jewell</u>, 87 F. Supp. 3d 127, 141 (D.D.C. 2015), <u>aff'd</u>, 829 F.3d 754 (D.C. Cir. 2016), the

plaintiff "must look beyond the jurisdictional statute for a waiver of sovereign immunity with

respect to [its] claim[,]" <u>United States v. Mitchell</u>, 445 U.S. 535, 538 (1980).  The APA

"eliminated the sovereign immunity defense in virtually all actions for non-monetary relief

against a U.S. agency or officer acting in an official capacity."  <u>See</u> <u>Clark v. Libr. of Cong.</u>, 750

F.2d 89, 102 (D.C. Cir. 1984).  "The APA expressly and unequivocally provides that, where a

plaintiff alleges that 'an agency or an officer or employee thereof acted or failed to act in an

official capacity or under color of legal authority,' the case 'shall not be dismissed nor relief

therein be denied on the ground that it is against the United States[.]'" <u>Mackinac Tribe</u>, 87

F. Supp. 3d at 142 (quoting 5 U.S.C. § 702).

 While the plaintiff fails to reference the APA in its Complaint, "a suit need not have been

brought pursuant to the APA in order to receive the benefit of that statute's sovereign immunity

waiver; indeed, the 'APA's waiver of sovereign immunity applies to any suit whether under the

APA or not.'" <u>Z St., Inc.</u>, 44 F.Supp.3d at 64.  Furthermore, "[p]leadings must be construed so

as to do justice."  Fed. R. Civ. P. 8(e).  With this perspective, although neither § 1331 nor the

Declaratory Judgment Act alone confer a waiver of sovereign immunity, the Court will consider

the Secretary's motion to dismiss based on the assumption that the plaintiff's claim relies on the

APA to establish a waiver of sovereign immunity.  Accordingly, the Court has subject matter

jurisdiction under Rule 12(b)(1). [5]

---

[5] Before proceeding to its Rule 12(b)(6) analysis, the Court will address the Secretary's argument that "the APA
does not provide a basis for jurisdiction because [the plaintiff] has failed to identify the existence of any final agency
action."  Def.'s Mem. at 13.  This assertion is included within the Secretary's Rule 12(b)(1) arguments.  <u>See</u> <u>id.</u> at
(continued . . .)

**B.      Rule 12(b)(6)**

Having concluded that it has jurisdiction to consider the plaintiff's allegations, the Court

turns to the Secretary's argument that the plaintiff has failed to adequately state a claim under

Rule 12(b)(6).  Because, as the Court noted previously, the plaintiff does not actually allege the

violation of a particular statutory provision or legal obligation, the Court will again consider the

Secretary's motion to dismiss based on the assumption that the plaintiff's claim relies on the

APA.[6]  The Secretary contends that this case should be dismissed because the Secretary "took no

final agency action with respect to the Leases, and the Leases have automatically expired by their

own terms."  Def.'s Mem. at 3.  In response, the plaintiff argues that the Ming and Barminski

Letters demonstrate that the Secretary took final agency action that caused the termination of the

plaintiff's fractional lease interest.  See Pl.'s Opp'n at 9.  The Court agrees with the Secretary

that the plaintiff has failed to adequately allege final agency action.

---

(. . . continued)

10–17.  Furthermore, the Secretary ultimately posits that the plaintiff's purported failure to allege a final agency action not only "[f]ails to [s]tate [a]n [APA] claim," id. at 12, but also creates "the absence of any waiver of sovereign immunity for the federal government[,]" id. at 17.  However, the Secretary misconstrues the nature of the APA's waiver of sovereign immunity.

The District of Columbia Circuit has "previously, and repeatedly, rejected the [Department's] [ ] argument." Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 186 (D.C. Cir. 2006).  Cases where, as here, "judicial review is sought under the APA rather than a particular statute prescribing judicial review, the requirement of final agency action is not jurisdictional.  Id. at 184 (quoting Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n, 324 F.3d 726, 731 (D.C. Cir. 2003)); see also Soundboard Ass'n v. Fed. Trade Comm'n, 888 F.3d 1261, 1267 (D.C. Cir. 2018) ("[T]he requirement of finality is not jurisdictional . . . .").  Thus, the Secretary's final agency action argument is properly considered under Rule 12(b)(6).  See Stone v. U.S. Embassy Tokyo, Civ. Action No. 19-3273 (RC), 2020 WL 4260711, at *4 (D.D.C. July 24, 2020) ("Although the court does not lose jurisdiction solely because a claim under the APA lacks final agency action, the claim might not survive a motion to dismiss."  (citing John Doe, Inc. v. Drug Enf't Agency, 484 F.3d 561, 565 (D.C. Cir. 2007))).  Accordingly, the Secretary's final agency action argument is only available under Rule 12(b)(6).

[6] The parties' submissions, considered collectively, support this conclusion.  See Def.'s Mem. at 12; Pl.'s Opp'n at 8–9; Def.'s Reply at 3; see also .  Furthermore, the APA permits review of a final agency action "for which there is no other adequate remedy in a court [.]"  Id. § 704.  Indeed, alleging final agency action is required for a suit of the nature that the plaintiff describes.  Cf. Mackinac Tribe, 87 F. Supp. 3d at 145 (D.D.C. 2015) (evaluating whether the plaintiff in that case exhausted administrative remedies after concluding that the APA independently provided the requisite waiver of sovereign immunity).

The plaintiff asserts that the Secretary "directed the suspension of [the] Leases" in 2001 and "the termination of [the plaintiff's] lease rights in August of 2013 by misinterpreting the" Northern District of California's July 2013 Order.  Id. at 9.  The plaintiff also argues that the Ming Letter "explicitly invites a new request for suspension of production, albeit one that could not be acted upon without [the Secretary] violating the then[-]extant 2001 Order," and the Barminski Letter constituted the Secretary's "decision that [the plaintiff's] lease was over . . . ."  Id. at 10.  In short, the plaintiff posits that "what [the Secretary] did here was to prematurely terminate the right of a lessee whose property interest derived from the statutes governing production of hydrocarbons from Federal offshore lands."  Id. at 11.

"It is well established that 'a court may not review a non-final agency action.'"  Farrell v. Tillerson, 315 F. Supp. 3d 47, 59 (D.D.C. 2018) (Walton, J.) (quoting Conservation Force v. Salazar, 919 F. Supp. 2d 85, 89 (D.D.C. 2013)).  Indeed, "[t]he APA . . . only provides a right to judicial review of 'final agency action for which there is no other adequate remedy in a court.'"  Holistic Candlers & Consumers Ass'n v. FDA, 664 F.3d 940, 943 (D.C. Cir. 2012) (emphasis in original omitted) (quoting 5 U.S.C. § 704).  "An agency action is final if it '[(]1) marks the consummation of the agency's decision making process' and [(]2) affects the 'rights or obligations . . . [or the] legal consequences' of the party seeking review."  Conservation Force, 919 F. Supp. 2d at 89 (omission and third alteration in original) (quoting Bennett v. Spear, 520 U.S. 154, 177–78, (1997)).  "[T]he finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury[.]"  Darby v. Cisneros, 509 U.S. 137, 144 (1993) (alteration in original) (quoting Williamson Cty. Regul. Plan. Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 193 (1985)).  "Agency action is considered final to the extent that it imposes an obligation, denies a

right, or fixes some legal relationship." Reliable Automatic Sprinkler Co., Inc. v. Consumer

Prod. Safety Comm'n, 324 F.3d 726, 731 (D.C. Cir. 2003) (citing Role Models Am., Inc. v.

White, 317 F.3d 327, 331–32 (D.C. Cir. 2003)).

      The plaintiff identifies two concrete actions by the Secretary that it claims constitute final

agency action: the Ming Letter and the Barminski Letter.  See Pl.'s Opp'n at 9.  According to the

plaintiff, the Ming Letter confirmed that the Leases had not expired but expressed the Secretary's

intent to seek the lifting of the suspensions, which would result in the expiration of the leases "in

accordance with 30 C.F.R. 250.180[,]" id. at 5, and the Barminski Letter "determine[d],

erroneously, that the [Northern District of California] had ended the plaintiff's lease[,]" id. at 10.

Thus, the plaintiff posits, the Secretary's "decision that [the plaintiff]'s lease was over is as final

as agency action can get."  Id.  The Court disagrees and must conclude that neither the Ming

Letter nor the Barminski Letter constitute final agency action within the meaning of the APA.

### 1. The Ming Letter

      The Court agrees with the Secretary that the plaintiff has failed to demonstrate that the

Ming Letter constitutes final agency action.  See Def.'s Reply at 3–6.  As the Court previously

explained, the Ming Letter states "that the [L]eases '[had] not been relinquished nor ha[d] they

expired due to the continued court-ordered directed suspensions on those lease[s,]'" Compl. ¶ 24;

see also Pl.'s Opp'n, Ex. 4 (Ming Letter), at 1–2, and "that the Department '[would] request

permission to lift the court-ordered directed suspensions[,]" Compl. ¶ 24.  The letter also

"not[ed] that '[the plaintiff's] leases [were] not in the primary term, no production or operations

ha[d] occurred on [the plaintiff's] leases for more than 180 days, and there [was] not a

suspension request for these leases upon which [the Department] may act.'"  Id. (alteration in

original).

First, the Ming Letter is not the "'consummation' of the agency's decisionmaking process." See Bennett, 520 U.S. at 178 (quoting Chi. & S. Air Lines, Inc. v. Waterman S.S. Corp., 333 U.S. 103, 113 (1948)).  Unlike a letter that might note the agency position that the plaintiff "had no statutory right[,]" Ciba-Geigy Corp. v. U.S. Env't Prot. Agency, 801 F.2d 430, 437 (D.C. Cir. 1986), or express an "indication that [its position was] subject to further agency consideration or possible modification," Holistic Candlers, 664 F.3d at 945 (quoting Ciba-Geigy Corp., 801 F.2d at 437), the Ming Letter merely conveys information and further administrative avenues for the plaintiff to explore, see Pl.'s Opp'n, Ex. 4 (Ming Letter) at 1–2 (suggesting that the Leases would not expire if there was "a suspension request for [the Leases] upon which [the Department] may act"); cf. Soundboard Ass'n, 888 F.3d 1261, 1268.  Indeed, the plaintiff acknowledges this interpretation of the letter.  See Pl.'s Opp'n at 10 (stating that the Department "explicitly invite[d] a new request for suspension of production" in the Ming Letter).

Second, the Ming Letter does not determine rights or obligations.  See Bennett, 520 U.S. at 178.  Like the routine explanatory letters that federal agencies issue regularly, "[t]he Letter neither announced a new interpretation of [any] regulations nor effected a change in [any] regulations themselves. Indep. Equip. Dealers Ass'n v. Env't Prot. Agency, 372 F.3d 420, 427 (D.C. Cir. 2004).  Instead, "[t]he Letter was purely informational in nature; it imposed no obligations and denied no relief."  Id.; see also Rhea Lana, Inc. v. Dep't of Lab., 824 F.3d 1023, 1028 (D.C. Cir. 2016) (holding that an agency letter to a plaintiff "restating" a "longstanding view" is unreviewable).  Indeed, the Ming Letter merely recites the applicable law governing the regulated party, see Pl.'s Opp'n, Ex. 4 (Ming Letter), at 2 (stating that "[i]f the [United States] District Court [for the Southern District of California] concurs with this request," the Department "'will lift the directed suspensions and [the Leases] will immediately expire in accordance with

30 C.F.R. 250.180, because" (1) the Leases "are not in the primary term," (2) "no production or operations have occurred on [the L]eases for more than 180 days," and (3) "there is not a suspension request for these leases upon which [the Department] may act."

Finally, the Ming Letter is not an action "from which 'legal consequences will flow[.]'" Bennett, 520 U.S. at 178 (quoting Port of Bos. Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic, 400 U.S. 62, 71 (1970).  Normally, "agency orders 'that do[] not [themselves] adversely affect [a] complainant but only affect[] his[, her, or its] rights adversely on the contingency of future administrative action'" are not final and, therefore, unreviewable.  See Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt., 460 F.3d 13, 22 (D.C. Cir. 2006) (alterations in original) (quoting DRG Funding Corp. v. Secy' of Hous. & Urb. Dev., 76 F.3d 1212, 1214 (D.C. Cir. 1996)); see also Cmty. Fin. Servs. Ass'n of Am. v. Fed. Deposit Ins. Corp., 132 F. Supp. 3d 98, 121 (D.C. Cir. 2015) (finding unreviewable guidance documents that did not "commit the [Department] to a particular course of action").  But see Rhea Lana, Inc., 824 F.3d at 1029–30 (making an exception for an agency letter that, by regulation, had the effect of satisfying a specialized intent requirement for the purpose of imposing civil penalties).  Here, the plaintiff acknowledges that the Secretary could not terminate the plaintiff's interest in the Leases without the future administrative action of filing a motion to lift the Northern District of California's suspension order.  See Pl.'s Opp'n at 9 (noting that the Northern District of California "direct[ed] that [the Department] decree a 'time-out' of all activities on the [Leases]").  Therefore, no legal consequences may flow from the Ming Letter itself.

Accordingly, because the Ming Letter neither represents the "'consummation' of the agency's decisionmaking process[,]" Bennett, 520 U.S. at 178 (quoting Chi. & S. Air Lines, Inc.,

333 U.S. at 113); determines any rights or obligations, see id.; nor results in any legal

consequences, see id.; it is not a final agency action for purposes of judicial review.

### 2. The Barminski Letter

For the same reasons applicable to the Ming Letter, the Court similarly agrees with the

Secretary that the plaintiff has failed to allege that the Barminski Letter constitutes final agency

action. As the Court previously explained, the Barminski Letter states that, "[a]s a consequence

of the [Northern District of California's July 13, 2013] order, [the plaintiff's] lease [ ] expired,

effective July 23, 2013." Compl., Ex. A (Barminski Letter) at 1–2. Although the Barminski

Letter notes a legal result, that result flows, not from the letter, but from the Northern District of

California's July 2013 Order.[7] Thus, the Barminski Letter is merely advisory: it conveys

information and is not independently consequential.

---

[7] The plaintiff argues that the Secretary "misinterpret[ed]" the Northern District of California's July 2013 order and itself "directed the termination of [the plaintiff's] lease rights[.]" Pl.'s Opp'n at 9. However, the Northern District of California's July 2013 order is clear: "The lease suspensions ordered by this Court in its order of June 20, 2001, 150 F. Supp. 2d 1046, 1057–58 (N.D. Cal. 2001) are hereby LIFTED," Jewell, No. 4:99-cv-04964-CW (N.D. Cal. July 23, 2013) (order lifting directed suspensions) (emphasis added). Even if the Northern District of California meant something else by its order, "[this Court] is unable to grant declaratory relief voiding prior district court orders." McNeil v. Harvey, No. 19-5127, 2020 U.S. App. LEXIS 8427, at *4 (D.C. Cir. 2020) (per curiam) (citing Celotex Corp. v. Edwards, 514 U.S. 300, 313 (1995)) ("[I]t is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected."); see also Sibley v. Roberts, 224 F. Supp. 3d 29, 38 (D.D.C. 2016); cf. Am. Tel. & Tel. Co. v. Equal Emp. Opportunity Comm'n, 270 F.3d 973, 975 (D.C. Cir. 2001) ("[T]here clearly would be final agency action if the [agency] filed a lawsuit against" the plaintiff, but "[o]f course, the [plaintiff] could not challenge that decision as final agency action under the APA; it would instead simply defend itself against the suit.").

The plaintiff also claims that it was not "served with notice of any application to lift the directed suspension contained in the Northern District of California's 2001 Order." Pl.'s Opp'n at 11. However, as the Secretary explains:

> whether [the plaintiff] was properly "served" with the August 2013 letter in the [Northern District of California] litigation is irrelevant to the issue at hand—i.e., whether DOI's August 2013 correspondence constitutes final agency action. . . . [And, the plaintiff's] argument is puzzling in light of [its] admission that it had received [the Ming L]etter but took no corresponding action as it pursued damages elsewhere.

Def.'s Reply at 5–6 (citing Compl. ¶ 24).

Therefore, as even more akin than the Ming Letter to the type of "advice letter that agencies prepare countless times per year[,]" Indep. Equip. Dealers Ass'n, 372 F.3d at 427, the Barminski Letter, like the Ming Letter, does not constitute final agency action.  "Absent facts sufficient to allege a final agency action, a complaint will be dismissed for failure to state a claim."  Perry v. U.S. Dep't of Educ., Civ. Action No. 20-2003 (JEB), 2021 WL 289358, at *2 (D.D.C. Jan. 28, 2021).  Accordingly, because the plaintiff has not identified any final agency action sufficient to state its claim, the Court must grant the Secretary's motion to dismiss pursuant to Rule 12(b)(6).

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the Secretary's motion to dismiss.[8]

**SO ORDERED** this 21st day of December, 2021.[9]

REGGIE B. WALTON
United States District Judge

---

[8] Having concluded that the plaintiff fails to adequately demonstrate any final agency action, the Court need not address the Secretary's argument that this case ought to otherwise be dismissed under Rule 12(b)(6) because it constitutes an impermissible collateral attack on the judgments issued by the Northern District of California.  See Def.'s Mem. at 17.

[9] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.